Joe B. OWEN, Appellant,

v.

Martha Jane PORTER and James Fred Porter, Appellees.

No. 04-90-00031-CV.

Court of Appeals of Texas,
San Antonio.

Aug. 22, 1990.

Curtis R. Harden, George B. Flint, Flint & Harden, Dallas, for appellant.

J.W. Johnson, Jr., Clara E. Johnson, Johnson & Shurley, Sonora, Lawrence F. Harrison, Junction, for appellees.

Before REEVES, CARR and MURRAY[1], JJ.

## OPINION

MURRAY, Justice.

This is an appeal after a trial to the court from a judgment against Joe B. Owen, Intervenor and Appellant. Joe B. Owen intervened in the divorce suit between Martha Jane Porter and James Fred Porter pending in Kimble County, Texas, as a post-marriage creditor of Fred Porter seeking collection of an existing judgment against Fred Porter through a turnover order, and seeking further a declaration that certain property was the sole management of joint management community property of James Fred Porter and that such property was not exempt from execution to satisfy Appellant's judgment. The trial court entered judgment granting a

divorce and dividing the marital property. The Court denied Appellant's requested declaration with regard to the property awarded to Jane Porter and denied the requested turnover order.

The controversy in this case involves ten (10) acres of land known as "Adams Place" located in Kimble County, Texas, and a real estate promissory note (hereinafter the "King Note") for land located in Kendall County, Texas. Both properties were acquired after marriage.

On or about April 5, 1980 Martha Jane Porter and James Fred Porter were married.

On May 15, 1984 the Adams Place tract was purchased for cash by James Fred Porter, and a deed in his name only was received.

On or about June 12, 1986 the Porters sold a house and lots in Kendall County, Texas, which they had purchased during the marriage, and received as part of the purchase price a Real Estate Lien Note. The Real Estate Lien Note was dated June 12, 1986, in the original principal balance of $60,633.00, was payable jointly to Fred Porter and wife, Jane Porter.

On or about September 15, 1986 the Porters entered into a verbal agreement upon separation whereby certain property, including the Adams Place and King Note, were to be her separate property. However, according to Jane Porter, if the spouses had reconciled their marriage or the trial curt had not approved the agreement and granted the divorce, the agreement would have been ineffective. The oral agreement further provided that Appellee would collect the rent from the lease of the Adams Place and the note payments on the King Note and use these funds as support for her and the children.

On or about November 7, 1986 Mr. Porter signed a promissory note payable to Appellant in the original principal amount of $87,500.00 in a transaction for a contract for deed on a residence used by Mr. Porter.

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

In October 1987 Mr. Porter defaulted on his obligation to Appellant and suit was filed in Taylor County, Texas, with Appellant as plaintiff and Mr. Porter as defendant. The suit resulted in a trial on July 5, 1988 and a Final Judgment against Mr. Porter, in Appellant's favor, in the amount of $89,656.25 together with attorneys fees, costs and interest, which was entered on July 22, 1988. The judgment was held by Appellant and had not been satisfied. An abstract of that judgment was filed in Kimble County, Texas on August 18, 1988.

Meanwhile, on July 4, 1987 Mrs. Porter filed this suit for divorce. During the separation, she collected the payments on the King Note and collected the rent on the Adams Place, which she deposited in a joint account which she had with Mr. Porter. In addition, during the separation Mrs. Porter received proceeds of the property supposedly partitioned to Mr. Porter and deposited them in the joint account. Mrs. Porter paid, from the funds she collected during 1987, monthly payments to Appellant on the promissory note signed by Mr. Porter on which he later defaulted. Mrs. Porter never received any conveyance of any of the property which she alleged had been set aside to her as her separate property, nor did she receive any writing which would have allowed her to execute documents in Mr. Porter's name respecting the Adams Place or the King Note.

TEX.FAM.CODE ANN. § 5.61(c) states that community property which is subject to "joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage."

Section 5.22 of the Texas Family Code is the section which defines what community property will be subject to the sole management, control, and disposition of a spouse and what property will be joint management property. Section 5.22 reads as follows:

§ 5.22 Community Property: General Rules

(a) During marriage, each spouse has the sole management, control, and disposition of the community property

that he or she would have owned if single, including but not limited to:

(1) personal earnings

(2) revenue from separate property;

(3) recoveries for person injuries; and

(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control and disposition.

(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement.

(c) Except as provided in Subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney in writing or other agreement.

There is no evidence to suggest that the Adams Place or the King Note, upon acquisitions, were from a source which would have made either subject to Mrs. Porter's sole management, control, and disposition.

The trial court found that the Adams Place and the King Note from September 15, 1986, and at all relevant times, were under the sole management, control, and disposition of Mrs. Porter.

It appears that the trial court viewed the oral agreement between Jane Porter and Fred Porter of September 15, 1986, as an "other agreement" pursuant to section 5.22(c) in order to conclude that the King Note and the Adams Place were subject to Jane Porter's "sole management, control, and disposition."

Appellant's points of error numbered one through sixteen attack the court's judgment because the evidence established as a matter of law that the Adams Place and the King Note were not under Mrs. Port-

er's sole management, control, and disposition. We agree.

We first consider Appellee's contention that legal sufficiency points are not preserved by Appellant because they were not raised in a motion for new trial.

■ Rule 324 of the Texas Rules of Civil Procedure, provides that a point in a motion for new trial is a prerequisite to complain an appeal of insufficiency of the evidence only in a jury trial. In non-jury cases a Motion for New Trial is not required to attack either the legal or factual sufficiency of evidence on appeal. *Farmer's Mutual Protective Association v. Wright*, 702 S.W.2d 295, 296–297 (Tex.App.—Eastland 1985, no writ); *Tankard-Smith, Inc. General Contractors v. Thursby*, 663 S.W.2d 473, 479 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

■ Resolution of the issue of whether the King Note and the Adams Place is joint or sole management, control, and disposition property of Mrs. Porter depends on the construction and interpretations of section 5.22(c) and the September 15, 1986 agreement.

Mr. Porter did not testify at the trial. Mrs. Porter's description of the terms of the oral agreement was that the Adams Place and the King Note was to be her separate property. She was equivocal as to the date that the separate property status was to take effect, alternating between immediately upon the agreement and upon divorce. She was asked whether the oral agreement would have ceased to be effective if the parties had reconciled, to which she answered "Yes, it would." She also testified that the property was her separate property as of September 15, 1986.

The oral agreement was an attempt at oral partition of the community property, which is ineffective by virtue of section 5.54 of the Texas Family Code, or was an attempt at an oral agreement incident to divorce, which must be in writing pursuant to section 3.631 of the Texas Family Code.

■ Since the explicit agreement of September 15, 1986 was not in the nature of an agreement pursuant to section 5.22(c) that leaves only the possibility of an agreement implied from the facts. We hold as a matter of law that the parties failed to institute a set of circumstances amounting to an implied agreement pursuant to section 5.22(c) in that Appellee Jane Porter received no actual ability to dispose of the Adams Place or the King Note. Real property transfer requires written conveyance and written authority. TEX.PROP.CODE ANN. § 5.021 (Vernon 1984). Transfer of a promissory note requires negotiation, which includes written endorsement made on the instrument of affixed thereto. TEX. BUS. & COM.CODE ANN. § 3.202 (Vernon 1968).

In *LeBlanc v. Waller*, 603 S.W.2d 265 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) the court found that the parties had attempted to divide their community property on separation by oral agreement, which failed to be effective as a partition. The court then found that the agreement was an "other agreement" pursuant to section 5.22(c). The court did not discuss the nature of the property divided by the parties other than to state it was a "modest estate." The property was in the wife's possession and was of such a nature that it needed no writing to give the wife the power of management, control, and disposition.

In the case of *Evans v. Muller*, 510 S.W.2d 651 (Tex.Civ.App.—Austin 1974), *rev'd per curiam*, 516 S.W.2d 923 (Tex. 1974), the Court of Civil Appeals concluded that a section 5.22(c) oral agreement was implied from the facts and did not rely on the oral agreement of the husband and wife. The Court of Appeals in reaching that conclusion examined the actions of the spouses, rather than their words and found the following evidence of the tacit agreement for sole management persuasive:

1. The note was placed in Mrs. Evans name alone.
2. Mrs. Evans refused to sign over other property until she got the note in her name.
3. The note payments were made payable by check to Mrs. Evans.
4. Mrs. Evans deposited the payments in her own bank account, and she was the only person authorized to draw on that account.

The Supreme Court of Texas reversed on the ground that the amendment to section 5.22 which removed the "in writing" requirement from agreements pursuant to this statute was not in effect when the case was tried, but did not criticize the reasoning otherwise.

The Adams Place tract was purchased for cash by Mr. Porter, and a deed in his name only was received. Mrs. Porter had no deed with her name on it regarding the Adams Place and has never received any document signed by Mr. Porter which would have allowed her to transfer the title. The note has not been assigned to Mrs. Porter or endorsed on its face to her, nor has she ever been given any document which would allow her to assign the note on Mr. Porter's behalf.

The undisputed evidence establishes as a matter of law that the Adams Place and the King Note are not subject to Mrs. Porter's sole management, control, and disposition.

We reverse the judgment of the trial court and remand the cause for rendition of judgment in accordance with this opinion.